IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE COLLADO NUNEZ, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 25-CV-143J |
| | ) | |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| LEONARD ODDO, *in his official capacity as Warden of Moshannon Valley Processing Center*; BRIAN MCSHANE, *in his official capacity as Acting Field Office Direction of Immigration and Customs Enforcement, Enforcement and Removal Operations Philadelphia Field Office*; KRISTI NOEM, *in her official capacity as Secretary of the Department of Homeland Security*; *and* PAMELA BONDI, *in her official capacity as Attorney General of the United States*, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Re: ECF No. 33 |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM ORDER**

Currently before this Court is Petitioner's Motion to Enforce Order Granting Petition for Writ of Habeas Corpus (the "Motion"). ECF No. 33. For the reasons that follow, the Motion will be granted.[1]

**I.    RELEVANT BACKGROUND**

Petitioner Jose Collado Nunez ("Petitioner") is an immigration detainee who is being held at the Moshannon Valley Processing Center ("MVPC") in Phillipsburg, Pennsylvania. Petitioner submitted a "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241" (the "Petition") on May 14, 2025. ECF No. 1, refiled as errata at ECF No. 2.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge on June 25, 2025. ECF Nos. 12 and 16.

Petitioner is a citizen of the Dominican Republic, and became a lawful permanent resident ("LPR") of the United States in 1999, when he was a child. ECF No. 1 at 1, 2, and 7.

On July 11, 2023, Petitioner was returning to the United States from the Dominican Republic. ECF No. 13-1 at 3. He was stopped and interrogated by Customs and Border Protection officers at John F. Kennedy International Airport in New York, but ultimately was paroled into the United States on that date. Id. at 4.

Almost a year later, on June 20, 2024, Petitioner was issued a Notice to Appear ("NTA"), in which he was charged with being an arriving alien who was inadmissible[2] due to having previously committed various crimes involving moral turpitude.[3] ECF No. 1-4 at 2. The asserted crimes of moral turpitude in the NTA are a conviction for manslaughter in the second degree, in violation of N.Y. Penal Law § 125.15, as well as convictions of two counts of Petit Larceny, in violation of N.Y. Penal Law § 155.25, in a separate case. Id. at 5. As a result of these charges, Petitioner has been detained in DHS custody since the NTA was served on June 20, 2024. Id. at 3, ECF No. 1-5 at 2; ECF No. 1-2 at 11.

Petitioner obtained counsel, and had a merits hearing before an immigration judge ("IJ") on January 30, 2025. ECF No. 13-12. On February 21, 2025, the IJ issued an oral decision in

---

[2] The language of the NTA never explicitly alleges that Petitioner is inadmissible. ECF No. 1-4. However, its invocation of "Section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act," which corresponds to 8 U.S.C. § 1182(a)(2)(A)(i)(I), clarifies that admissibility is the issue underlying Petitioner's removal proceedings.

[3] LPRs, such as Petitioner, are deemed to be seeking admission to the United States when returning from abroad if certain conditions are met. 8 U.S.C. § 1101(a)(13)(C). One of those is the commission of an offense identified in 8 U.S.C. § 1182(a)(2). Id. at § 1101(a)(13)(C)(v). This includes a so-called "crime involving moral turpitude." Id. at § 1182(a)(2)(A)(i)(I).

which he granted relief in the form of cancellation of removal pursuant to INA § 240a.[4]  ECF No. 13-13 at 13.  However, in the same order, the IJ denied Petitioner's application to for waiver of inadmissibility pursuant to INA § 212(h),[5] and did not reach Petitioner's application for other forms of relief.  Id. at 13-14.  See also ECF No. 1-9.

Each party appealed the IJ's decision to the Board of Immigration of Appeals ("BIA") on different grounds.  ECF No. 13-15 at 6; ECF No. 13-16 at 6.  On August 22, 2025, Petitioner filed a notice indicating that the BIA had remanded his case back to the IJ "to allow for further development of the record and the consideration of any new evidence to support a grant of relief."  ECF No. 26 at 1.  It appears that, as of the filing of the instant Motion, Petitioner once again has been granted cancellation of removal, and denied a waiver of inadmissibility by an IJ.  ECF No. 34 at 13 n.3.  Both parties appealed to the BIA once again, and that appeal remains pending.  Id.

In the Petition, Petitioner challenged his lengthy immigration detention, and sought an order requiring either his immediate release from detention, or a bond hearing before an IJ at which the Department of Homeland Security ("DHS") bore the burden to demonstrate that he should remain detained.  ECF No. 1 at 1, 24-25.

After determining that it was appropriate to adjudicate Petitioner's claims under the factors set forth in German Santos v. Warden Pike County Correctional Facility, 965 F.3d 203, 206 (3d Cir. 2020), the undersigned conditionally granted the writ.  ECF No. 27 at 1-2 and 5-9.  The Order read, in pertinent part:

> AND NOW, this 25th day of August, 2025, for the reasons stated in the Memorandum Opinion contemporaneously filed herewith, IT IS HERBEY ORDERED, ADJUDGED, and DECREED that Petitioner's "Petition for Writ of Habeas Corpus Pursuant to 28

---

[4] INA § 240a(a) corresponds to 8 U.S.C. § 1229a(a).

[5] INA § 212(h) corresponds to 8 U.S.C. § 1182(h)

U.S.C. § 2241," ECF No. 1, refiled as errata at ECF No. 2, is CONDITIONALLY GRANTED.

IT IS FURTHER ORDERED that Petitioner shall be provided a bond hearing before a neutral immigration judge of the Executive Office of Immigration Review on or before **September 8, 2025**. At said bond hearing, the Government shall bear the burden to justify Petitioner's detention by clear and convincing evidence. German Santos v. Warden Pike Cnty. Corr. Fac., 965 F.3d 203, 213 (3d Cir. 2020). "That evidence must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community." Id. at 214.

This Order should not be read to constrain the immigration court from considering additional factors that normally are available to it in the context of an immigration bond hearing, such as alternatives to detention or the Petitioner's ability to pay, to the extent that they are not inconsistent with the Government's burden, as set forth in German Santos.

If Respondents fail to provide Petitioner with a bond hearing satisfying those requirements by that date, THE WRIT SHALL ISSUE, and Petitioner shall be released with conditions of supervision consistent with applicable law.

ECF No. 28 at 1-2 (emphasis in original).

Petitioner was provided a bond hearing before IJ Adam Panopoulos on August 28, 2025, three days after this Court's Order was issued. Petitioner was represented by counsel. ECF No. 34 at 10. A transcript of the hearing is on the record at ECF No. 34-1.

During the hearing, IJ Panopoulos acknowledged this Court's Order conditionally granting the writ, and the burden that it placed on DHS to prove by clear and convincing evidence that Petitioner should remain detained "to prevent him from fleeing or harming the community." Id. at 8-9. IJ Panopoulos also listed the paper evidence that has been submitted by the parties prior to the hearing. Id. at 5-8. The IJ indicated that he had considered that evidence fully, although he noted that he reviewed 185 pages of Petitioner's rebuttal evidence in about 20 minutes while off the record at the hearing. Id. at 7.

4

The evidence submitted by DHS was not extensive.[6] It include an unauthenticated I-213 "Record of Deportable/Inadmissible Alien" form, ECF No. 34-5 at 5; a copy of Petitioner's immigrant visa, id. at 10; records related to Petitioner's 2017 conviction of manslaughter in the second degree in New York, id. at 11-17; the record of Petitioner's 2018 conviction of two counts of misdemeanor petit larceny, id. at 18-23; and the August 22, 2025, decision by the BIA remanding Petitioner's immigration case to an IJ, ECF No. 34-6.

The charging documents for Petitioner's state court convictions were included in DHS's evidence. With respect to his manslaughter conviction, Petitioner was arrested on May 21, 2017, and initially was charged with both manslaughter in the first degree and manslaughter in the second degree on June 13, 2017. ECF No. 34-5 at 12 and 17. He pleaded guilty to manslaughter in the second degree, and was sentenced to six months imprisonment and five years of probation on July 13, 2017. Id. at 12. The *mens rea* of this crime is recklessness. N.Y. Penal Law § 125.15(1). Petitioner appears to have been released from state custody sometime in late 2017. ECF No. 34-1 at 15; ECF No. 34-7 at 28.

On November 18, 2018, Petitioner was arrested after being caught stealing from some stores in a shopping mall on Long Island, New York, while he was at liberty on probation for his manslaughter conviction. ECF No. 34-7 at 29; ECF No. 34-5 at 19. He was indicted on charges of felony robbery in the second and third degrees, as well as on three counts of misdemeanor petit larceny on December 31, 2018. ECF No. 34-5 at 22-23. On August 29, 2019, Petitioner was convicted of two counts of misdemeanor petit larceny, and was sentenced to two consecutive terms of 364 days of imprisonment on October 21, 2019 – nearly one year after his arrest. Id. at 19. See

---

[6] The DHS's evidence did not relate to Petitioner's current danger to the community. Instead, it presented evidence only as to Petitioner's prior criminal conduct in 2017 and 2018.

also N.Y. Penal Law § 155.25.  On the same date Petitioner also was resentenced to one year of imprisonment for his 2017 manslaughter conviction.  ECF No. 34-5 at 12.  According to the record, Petitioner was released from state custody sometime in 2019.  ECF No. 34-1 at 15; ECF No. 34-7 at 30.

There is no indication on the record that Petitioner had any encounters with law enforcement from the time of his release from state custody in 2019, until his  brief detention on July 11, 2023, by immigration officials upon his return from abroad.  The same is true for the period of time from his 2023 return to the United States until his current immigration detention began on June 20, 2024.  There is no indication on the record that Petitioner has engaged in any violent conduct or any other disciplinary infractions while detained at MVPC.

Petitioner's rebuttal evidence was comparatively lengthier than what was presented by DHS. ECF No. 34-7 at 3-7.  It included roughly 177 pages of immigration documents: Petitioner's declaration, medical records showing Petitioner's mental health diagnoses and injuries sustained during the incident for which he was convicted of manslaughter, employment records, tax records, letters from Petitioner's family and friends, certificates of completion of programs taken while detained, and photos of Petitioner and his family.  Id. at 10-186.

With respect to the manslaughter conviction, Petitioner avers in his declaration that he accidently killed a man by stabbing him during a fight at a wedding in 2017.  Id. at 26-28. Petitioner states that he was attacked by the victim, and tried to flee.  Id. at 27.  Eventually, the victim caught Petitioner, and broke a beer bottle over Petitioner's head, splitting his scalp.  Id. Petitioner then stabbed the victim, who died as a result.  Id.

Further, Petitioner submitted medical records from his hospital stay immediately following the stabbing, which details various injuries, including a scalp laceration from which glass had to

be removed. Id. at 43 and 46. Of note, these medical records also state, without detail, that Petitioner had been attacked by other people at the wedding after the stabbing, and indicate that Petitioner had to be intubated during his stay at the hospital. Id. at 44 and 47.

Petitioner addresses the circumstances underlying his 2019 misdemeanor petit larceny convictions in his declaration, averring that he stole clothing and perfume from a mall. He was grabbed by a security guard as he tried to leave a store with stolen goods, struggled to escape, "accidently hurt [the guard] in the struggle" and then ceased resisting apprehension. Id. at 29.

Petitioner's medical evidence indicates that he has been diagnosed with post-traumatic stress disorder, anxiety, and major depressive disorder. ECF No. 34-7 at 38. He was receiving treatment from a board certified psychiatrist from May 2020, until his immigration detention began in June 2024. Id. at 30 and 38. Petitioner states in his declaration that he has been receiving mental health treatment since 2020, and avers that he has been prescribed medication that has "helped [him] reach a more stable place with [his] mental health."[7] Id. at 30 and 31.

At the hearing, no witnesses were called and no other substantive testimony was presented. Instead, it was devoted almost entirely to attorney argument explaining the timeline of Petitioner's convictions and immigration history. The IJ's references to the burden on DHS during the hearing largely were related to the order of argument. ECF No. 34-1 at 9 and 10-11.

Unsurprisingly, Petitioner's records relating to his prior convictions played a greater role in the IJ's decision than did the rest of the DHS's evidence. The IJ stated on the record that he reviewed all of the evidence presented by Petitioner – although, as Petitioner points out several

---

[7] In his declaration, Petitioner reports that he has not been receiving the psychiatric care and medications as prescribed by his treating psychiatrist while he has been detained at MVPC. ECF No. 34-7 at 32-33.

times in his briefing, the IJ also stated on the record that he did so in the span of about 20 minutes. Id. at 7.

After the hearing, the IJ issued an oral decision denying bond. Id. at 31. The IJ relied on Petitioner's 2017 manslaughter conviction, as well as Petitioner's "reckless disregard for the safety of others" that the IJ imputed on Petitioner's 2018 larceny convictions, to find that DHS had met its burden to show that Petitioner was "highly probable" to be a danger to the community. Id. at 31-32. The IJ also took note of the brief period of time between Petitioner's initial release from confinement for his manslaughter conviction and his commission of petit larceny as support for his conclusion. Id. at 31-32 ("The court reasons that the respondent's state of mind in the year after his release from prison for the manslaughter conviction indicates that the respondent was highly probable a danger to the community, and he did commit a dangerous act of various thefts in a public place that appeared to have culminated in him using force against an individual in one of those places that resulted in, according to respondent's counsel, him being apprehended.").

The IJ discounted Petitioner's apparent law-abiding behavior from his release from state custody in 2019 to the August 2025 bond hearing (approximately six years) as insufficient to rebut DHS's evidence of past danger, but he failed to explain why. Id. at 32-33. The IJ went on to hold Petitioner's recitation of the events of the stabbing in 2017 against him, stating that he was "troubled that the respondent's declaration submitted in today's bond hearing appears to assert a claim of self-defense as a justification for the stabbing." Id. at 33. The IJ went on to conclude that he was barred from "look[ing] behind the record of conviction." Id. The IJ also opined that the evidence in the medical records that Petitioner had been attacked by witnesses to the stabbing

somehow was inconsistent with any assertion of self defense.[8] Id. The rest of Petitioner's rebuttal evidence was not specifically addressed by the IJ. Id. at 33-34. Of note, the IJ did not specifically consider the undisputed evidence that Petitioner was receiving mental health treatment from May 2020 to his immigration detention in June 2024. ECF No. 34-7 at 30-31 and 38.

Petitioner appealed the adverse bond decision to the BIA, which remains pending.

On October 22, 2025, a ***different*** IJ, Ubaid ul-Haq, issued the immigration court's formal bond memorandum.[9] ECF No. 34-3. IJ ul-Haq's memorandum largely tracked with the oral decision stated on the record by IJ Panopoulos. There are, however, two important points worth mentioning. First, IJ ul-Haq explicitly held that "[i]n the last ten years, Respondent has taken another person's life and then committed the very dangerous offense of robbery." Id. at 4. But it is undisputed on the record that Petitioner was not convicted of robbery – only of misdemeanor petit larceny. Somewhat ironically, IJ ul-Haq's determination that Petitioner had committed a robbery of which he was not convicted came merely one paragraph before the IJ stated that he "cannot look behind the fact of conviction and relitigate the ultimate question of an alien's guilt or innocence" when castigating Petitioner for his declaration describing the facts underlying his manslaughter conviction. Id. at 4.

Second, IJ ul-Haq acknowledged that Petitioner's 2019 misdemeanor petit larceny convictions had been entered approximately five years prior to the issuance of the bond memorandum, but opined that "given the gravity and the underlying circumstances of each criminal offense he has committed, the passage of time does not preclude what the court finds to

---

[8] The IJ did not see fit to elaborate this point. The IJ also did not address the glass that was removed from Petitioner's scalp in his oral decision.

[9] The record does not explain why an IJ who was not present at the bond hearing was chosen to write the immigration court's official bond memorandum for the appeal.

be clear and convincing evidence of Respondent's danger to the community." Id. However, IJ ul-Haq did not see fit to explain how the passage of time applied to Petitioner's case, specifically – and notably, failed to address that Petitioner had been free from incarceration from 2019 to June 2024 without incident, and had no record of violence or disciplinary infractions during the additional approximately 16 months that Petitioner had detained by immigration authorities at the time that that IJ issued the bond memorandum.

Neither IJ's Panopoulos' oral decision denying bond, nor IJ ul-Haq's memorandum, ever considered Petitioner's mental health diagnoses, ongoing treatment, and the absence of criminal conduct after his 2019 release from state custody.

Petitioner filed the instant Motion on February 17, 2026. ECF No. 33. Respondents responded in opposition on March 10, 2026. ECF No. 42. Petitioner replied on March 24, 2026. ECF No. 43. The Motion is now ripe for consideration.

## II.    JURISDICTION

As a general proposition, it is beyond reasonable dispute that a habeas court retains jurisdiction to enforce compliance with an order conditionally granting the writ. See, e.g., Fernandez Aguirre v. Barr, No. 19-CV-7048, 2019 WL 4511933, at *3 (S.D.N.Y. Sept. 18, 2019). Cf. Satterlee v. Wolfenbarger, 453 F.3d 362, 369 (6th Cir. 2006) (a conditional grant of a writ of habeas corpus "would be meaningless if a habeas court could not order a noncompliant state to release a prisoner."). Accord. Haskell v. Folino, 461 F. Supp. 3d 202, 210-11 (W.D. Pa. 2020). Accord. Morgan v. Oddo, No. 24-221, 2025 WL 2653707, at *3 (W.D. Pa. Sept. 16, 2025).

That said, the Immigration and Nationality Act ("INA") limits the scope of this Court's review of an IJ's bond determination. Specifically, 8 U.S.C. § 1226(e) states:

(e) Judicial review

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

There is little guidance from the United States Court of Appeals for the Third Circuit as to the interplay between this Court's authority to enforce its prior conditional grant of the writ, and Section 1226(e)'s bar of review of the IJ's discretionary bond decision.

But in Ghanem v. Warden Essex County Correctional Facility, No. 21-1908, 2022 WL 574624 (3d Cir. Feb. 25, 2022), a non-precedential opinion issued after German Santos, the Third Circuit discussed the scope of a federal habeas court's jurisdiction to review the outcome of an immigration bond hearing for compliance with at order conditionally granting federal habeas relief. It stated that "[a]lthough we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, we may review whether the bond hearing was fundamentally unfair." Id. at *2 (citation footnotes omitted).

Applying this direction from the Third Circuit, this Court concludes that it retains jurisdiction to review the bond hearing for fundamental fairness.

## III.    EXHAUSTION

Respondents contend that this Court "can allow" the BIA to address the arguments raised in Petitioner's Motion in his pending appeal to the BIA from the denial of bond. ECF No. 42 at 5. They hint, without asserting outright, that this presents an exhaustion issue. Id.

While Section 2241 does not include an explicit statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required a petitioner to exhaust his administrative remedies before filing a Section 2241 petition. Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996).

11

But it is not clear that there is any exhaustion issue here at all. This is not a newly-filed habeas petition in which Petitioner seeks habeas review of the IJs' decisions denying bond. Instead, Petitioner seeks federal habeas relief from his lengthy mandatory detention under Section 1226(c). And as to that issue, the writ already has been conditionally granted. ECF No. 28. Petitioner asks this Court to review IJ Panopoulos' hearing, and the subsequent decisions denying bond, for compliance with that Order. On that point, there is nothing left for Petitioner to exhaust. See, e.g., Luciano-Jimenez v. Doll, 543 F. Supp. 3d 69, 71 n.1 (M.D. Pa. 2021).

Moreover, to the extent that any exhaustion issue can be contrived from the procedural posture of this case, exhaustion in this context is not mandatory; instead, it is prudential, and may be excused. Chajchic v. Rowley, No. 1:17-CV-457, 2017 WL 4401895, at *4 (M.D. Pa. July 25, 2017), report and recommendation adopted, 2017 WL 4387062 (M.D. Pa. Oct. 3, 2017). Therefore, the undersigned concludes that the exhaustion doctrine does not bar this Court's review of Petitioner's Motion.

## IV.    ENFORCEMENT OF ORDER CONDITIONALLY GRANTING THE WRIT

As stated above, in Ghanem, the Third Circuit recognized that, even in the wake of Section 1226(e), and on a motion to enforce a grant of habeas relief, federal courts retain the authority to review whether a resulting immigration bond hearing is fundamentally unfair. 2022 WL 574624, at *2. It further recognized that "[i]n a fundamentally fair bond hearing, due process has three essential elements. An alien: (1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests." Id. (citation footnote and internal quotation marks omitted).

In this case, as to elements (1) and (2), there is not much to dispute. The record indicates that both parties submitted evidence in advance of the August 28, 2025, bond hearing. It also appears from the record that the IJ reviewed and considered that evidence – though Petitioner takes issue with the approximately 20 minutes that the IJ spent reviewing his 177 pages of substantive documentary evidence.[10]  ECF No. 34-1 at 7; ECF No. 34 at 6. Additionally, with respect to Ghanem's second element, Petitioner, represented by counsel, made arguments on his own behalf at the bond hearing – although DHS bore the burden of proof.

In the instant Motion, Petitioner's arguments sound in Ghanem's third element – that Respondents failed to comply with conditional grant of federal habeas relief because the IJ did not provide Petitioner with an individualized bond hearing. ECF No. 34 at 6. Intertwined with this argument is that the IJ failed to hold DHS to the required burden to justify by clear and convincing evidence that Petitioner should be detained, as expressly required by this Court's Order conditionally granting the writ. Id. ECF No. 28 at 1-2.

In order to determine whether a bond hearing is individualized, a court must look first to whether the IJ committed "plain legal error by misidentifying or misapplying the relevant legal precepts[;]" and then whether a rational basis for the denial of bond existed. Romero v. Ogle, No. 1:21-CV- 01192, 2021 WL 8362027, at *2-3 (M.D. Pa. Nov. 12, 2021) (internal citations and quotes omitted).

---

[10] It is worth mentioning, however, that much of the rebuttal evidence consisted of photographs of Petitioner and his family, certificates, and letters of support. It is unclear whether the aggregate of that evidence required additional time for review. Petitioner further does not explain in his briefing what information, specifically, was overlooked by the IJ in his review of that evidence, or how that specific information was relevant to the determination whether he presented a danger to the community. Nor are these photos, certificates, and letters cited with specificity in Petitioner's arguments at the bond hearing, but instead are discussed only generally by counsel. ECF No. 34-1 at 24-25.

Where, as here, an IJ denies bond based on a likelihood of danger, due process requires more than "rubberstamp denials based on temporally distant offenses." Chi Thon Ngo v. I.N.S., 192 F.3d 390, 398 (3d Cir. 1999), amended (Dec. 30, 1999). This is because:

> [w]hen detention is prolonged, special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable. The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category. Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption.

Id. Thus, while evidence of past convictions is indisputably relevant, "the process due even to excludable aliens requires an opportunity for an evaluation of the individual's *current* threat to the community and his risk of flight." Id. (emphasis added).

The current risk of danger presented by an alien due to a prior conviction may be determined, for example, by the analyzing the facts underlying that conviction. In Chi Thon Ngo, the Third Circuit admonished the former INS for failing to inquire into the circumstances underlying an alien's criminal record in order to ascertain the likelihood of whether the alien might reoffend. Id. ("For example, the petitioner in this case was repeatedly denied parole by INS officials based on no more than a reading of his file that listed years-old convictions for firearm, attempted robbery, and bail jumping offenses. No inquiry was made to ascertain, for example, whether the bail jumping offense was the result of a lack of notice, misunderstanding, or an affirmative effort to avoid apprehension. The INS made no effort to determine if such conduct was presently likely to be repeated or whether it could be discouraged by requiring appropriate surety."). The Third Circuit's decision in Chi Thon Ngo is directly on point with the Motion presently before this Court.

14

Here, the gist of Petitioner's assertion, as summarized in his Reply, is that the IJ's denial of bond violated Petitioner's due process rights, as well as this Court's Order at ECF No. 28, because it mechanically relied on his prior convictions from 2017 and 2019, improperly shifted the burden onto Petitioner to show that he is not a current danger to the community in light of those convictions, and failed to provide individualized consideration of Petitioner's post-conviction rehabilitation. ECF No. 43 at 4. Although this is a close call, when carefully considered, Petitioner's argument is persuasive.

As discussed above, DHS improperly relied on the bare record of Petitioner's prior convictions to make its case that Petitioner remained a danger to the community. ECF No. 34-5. Manslaughter is a serious crime – as is robbery, though Petitioner never was convicted of it. But beyond the record of Petitioner's prior convictions, DHS failed to produce clear and convincing evidence that Petitioner presented a current danger to the community (or even any evidence of the facts underlying Petitioner's prior convictions themselves).

Additionally, neither IJ who opined on Petitioner's dangerousness was willing to consider Petitioner's version of events underlying his manslaughter conviction. Instead, both IJs chastised Petitioner for his declaration, claiming that they were "troubled" by his recitation of the circumstances leading to and following the manslaughter, despite the lack of any competing facts in the bare record presented by DHS. ECF No. 34-1 at 34; ECF No. 34-3 at 4. The medical evidence of injuries inflicted upon Petitioner and of glass in his scalp did not appear to mitigate the offense in the IJs' view. The logic behind the IJs' conclusion that evidence that Petitioner was attacked by third parties after the stabbing somehow being inconsistent with Petitioner's factual recitation is unexplained by the record, and is unsupported.

While DHS argued that Petitioner's apparent prior hallucinations and memory issues might render his recollection of the stabbing unreliable, ECF No. 34-1 at 26-27, the fact remains that DHS failed to provide any affirmative evidence of the circumstances regarding the incident *or* any evidence of whether Petitioner was unable to recall the incident correctly.

Finally, both the oral decision and the bond memorandum mentioned the passage of time between Petitioner's misdemeanor petit larceny convictions in 2019 and the initiation of his detention by immigration authorities on June 20, 2024.  ECF No. 34-1 at 33; ECF No. 34-3 at 4. But each IJ treated the passage of time as rebuttal evidence to Petitioner's presumed dangerousness.  For example, in his oral decision, IJ Panopoulos stated:

> In this particular case, the Court does agree with the Department of Homeland Security that the passage of several years from the respondent's release from late 2019 until DHS detained him in the year 2024 is not sufficient to bring his risk of danger to the community below that of highly probable, which approximates the clear and convincing evidentiary standard in the law.

ECF No. 34-1 at 33.  IJ ul-Haq stated:

> The court also acknowledges that Respondent's most recent conviction was approximately five years ago. However, given the gravity and the underlying circumstances of each criminal offense he has committed, the passage of time does not preclude what the court finds to be clear and convincing evidence of Respondent's danger to the community.

ECF No. 34-3 at 4.

This analysis misses the point entirely.  Due process and this Court's Order at ECF No. 28 required DHS to show, by clear and convincing evidence that Petitioner was a ***current*** danger to the community.  Chi Thon Ngo v. I.N.S., 192 F.3d at 398.  DHS does not meet that burden by showing ***past*** danger, and then shifting the burden to Petitioner to show that the passage of time has mitigated that risk.

Here, DHS relied solely on the bare record of temporally distant convictions, clearly contrary to the Third Circuit's holding in <u>Chi Thon Ngo</u>. Given the lack of evidence of any dangerous activity by Petitioner in the nearly five years that he remained at liberty between his release from state custody in 2019, and the beginning of his immigration detention in June 2024, coupled with the absence of evidence of any violence or disciplinary infraction committed by Petitioner while he has been detained, DHS failed to meet its burden and establish by clear and convincing evidence that Petitioner is a current danger.

The undersigned is cognizant of the admonition of the Third Circuit that "[a] motion to enforce a judgment is not the proper avenue to relitigate the merits of a bond order[,]" and that this Court lacks the authority to "reweigh the evidence" presented at the bond hearing. <u>Ghanem</u>, 2022 WL 574624, at *2 and 3. To be sure, the arguments in the Motion come close to asking this Court to do just that. This Court does not have the authority to do so. However, in light of the Third Circuit's holding in <u>Chi Thon Ngo</u> and for the reasons stated above, this Court concludes that Petitioner's bond hearing was fundamentally unfair because it was not individualized, as required by <u>Ghanem</u>.

V.    **CONCLUSION**

Upon review, the undersigned concludes that Petitioner was denied due process at the bond hearing conducted on August 28, 2025, because neither IJ who denied bond required DHS to prove by clear and convincing evidence that Petitioner is a ***current*** danger to the community. As such, Respondents have failed to comply with the Order conditionally granting the writ. ECF No. 28. Accordingly, the Motion, ECF No. 33, will be granted, and the writ shall issue.

17

A certificate of appealability is not required for federal detainees seeking relief under Section 2241.  Muza v. Werlinger, 415 F. App'x 355, 357 n.1 (3d Cir. 2011).  See also 28 U.S.C. § 2253(c)(1).  Therefore, it is not necessary to determine whether one should be issued here.

AND NOW, this ⎯⎯ day of April, 2026, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Petitioner's Motion to Enforce Order Granting Petition for Writ of Habeas Corpus, ECF No. 33, is GRANTED.

IT IS FURTHER ORDERED that a writ of habeas corpus is issued.  Respondents shall RELEASE Petitioner from immigration detention FORTHWITH, subject to conditions consistent with applicable law.

IT IS FURTHER ORDERED that the parties shall provide written notice of Petitioner's release on the docket within 24 hours of its occurrence.

BY THE COURT,

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:    All counsel of record (*via* CM/ECF)

18